IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SEAN SULLIVAN, ) | |
| ) | |
| Plaintiff, ) | Civil No. 04-1665-JE |
| ) | |
| v. ) | OPINION AND ORDER |
| ) | |
| CLACKAMAS COUNTY, DANIEL STEEVES, ) | |
| KIM KLUSMANN, CITY OF WILSONVILLE, ) | |
| FLOYD PEOPLES, CHARLES JACOBY, ) | |
| and JOHN DOES 1-5, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

    David D. Park
    Elliott & Park
    Abernethy House
    0324 S.W. Abernethy Street
    Portland, OR 97239-4356
        Attorneys for Plaintiff

1 - OPINION AND ORDER

    Edward S. McGlone III
    Clackamas County Counsel
    2051 Kaen Road
    Oregon City, OR 97045
        Attorney for Defendants Clackamas County,
        Daniel Steeves, and Kim Klusmann

    James P. Martin
    Kari A. Furnanz
    Hoffman, Hart & Wagner, LLP
    20th Floor
    1000 S.W. Broadway
    Portland, OR 97205
        Attorneys for Defendant City of Wilsonville,
        Floyd Peoples, and Charles Jacoby

JELDERKS, Magistrate Judge:

Plaintiff Sean T. Sullivan brings claims for civil rights violations and false imprisonment against defendants Clackamas County (the County), Clackamas County Deputy Sheriff Daniel Steeves, the City of Wilsonville (the City), Floyd Peoples, and Charles Jacoby.

Defendants move for summary judgment. Plaintiff moves for partial summary judgment on liability. I grant the City defendants' motion for summary judgment. I deny plaintiff's motion for partial summary judgment and the County defendants' motion for summary judgment.

### CITY DEFENDANTS' SUMMARY JUDGMENT MOTION

I. Background[1]

Defendant Floyd Peoples, the City's Operations Manager for

---

[1] Statements in the Background are provided only to explain this court's rulings and are not relevant for any other purpose.

2 - OPINION AND ORDER

Public Works, is responsible for park maintenance.  The City Code authorizes Peoples to enforce park rules, including the prohibition on littering.

In early April 2004, Peoples learned that high school students using the picnic area at the City's Memorial Park had been littering, disrupting traffic flow, and speeding.  On April 9, 2004, Peoples decided to observe the use of the picnic area. Peoples asked defendant Charles Jacoby, a senior utility worker for the City, to stand by the gate to the southern entrance to the park.

At about 11:20 that morning, plaintiff, who was then a senior at Wilsonville High School, drove his car to the park with three other high school students for a lunch break.  Robert Freece, the plaintiff in the companion case, <u>Freece v. Clackamas County</u>, Civ. No. 04-1666-JE, was one of plaintiff's passengers.

Plaintiff parked in the south parking lot, near some picnic tables.  About 15 or 20 other students were in the park taking their lunch break.

At the picnic area, Peoples saw two persons littering and asked them to pick up their trash.  They complied.  However, other trash remained.  Someone told Peoples that the occupants of a green car had tossed their litter out a window.

Peoples radioed Jacoby to close the gate so Peoples could ask those about to leave the park to clean up any trash they

3 - OPINION AND ORDER

might have left.  Based on his experience with high school students in the park, Peoples thought that a short conversation about manners in using the park might help prevent future littering.

Jacoby closed the gate while Peoples stayed near the picnic area.  Jacoby put a padlock through the gate's latch, but did not completely close the padlock's mechanism.  After the occupants of the green car had picked up their litter, Peoples told Jacoby to reopen the gate.

A few minutes later, plaintiff and others were getting into their cars and preparing to leave the park.  Peoples saw that there was still litter in the picnic area and radioed Jacoby.  He told Jacoby to close the gate again and to tell those park users whose cars were stopped at the gate to return and pick up their litter.  There is no evidence that plaintiff or his passengers were responsible for any of the litter.

Jacoby closed the gate but did not padlock it, and conveyed Peoples's instructions to those stopped at the gate.  At this point, plaintiff's car was the third car in line from the gate.

Several persons left their cars to protest the closing of the gate.  Some complaints were profane.  One student pushed the gate open, forcing Jacoby aside.  Kent Dahlgren, a Xerox employee who was a passenger in one of the cars behind the gate, came forward to help restore order and to close the gate.

The drivers of the first two cars in line took this opportunity to drive out the now open gate. One car nearly ran over Dahlgren's foot as it drove by.

When the two cars ahead of him drove away, plaintiff moved his car right up to the gate. However, he did not try to drive through the gate when Dahlgren was trying to close it. There is a factual dispute over plaintiff's actions at the gate.

Peoples was worried that the situation was getting out of control and called 9-1-1. Defendant Daniel Steeves, a Clackamas County Deputy Sheriff, arrived about three minutes later. The gate had been closed no more than a few minutes. The City defendants had no active role in the subsequent events leading to plaintiff's arrest by Deputy Steeves.

## II.  Standards

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The

court should resolve reasonable doubts about the existence of an issue of material fact against the moving party. <u>Id</u>. at 631. The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. <u>Id.</u> at 630-31.

**III.  Discussion**

    **A.  Civil Rights Claim**

Plaintiff contends that the City defendants violated his Fourth Amendment rights by closing the gate and preventing him from leaving the park.

        **1.  Elements of Fourth Amendment Violation Claim**

A state official may be personally liable under 42 U.S.C. § 1983 if the official acted under color of state law in depriving the plaintiff of a federal right. <u>Romano v. Bible</u>, 169 F.3d 1182, 1185-86 (9th Cir. 1999). The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." To show that an official has violated the Fourth Amendment, a plaintiff must show that a search or seizure occurred, and that the search or seizure was unreasonable. <u>See</u> <u>Brower v. County of Inyo</u>, 489 U.S. 593, 599 (1989).

          **a.  Seizure**

The City defendants first contend that plaintiff was not seized for Fourth Amendment purposes because the parking lot gate was not locked and plaintiff could walk past the gate (assuming

6 - OPINION AND ORDER

that he would have chosen to leave his car behind). A Fourth Amendment seizure occurs only "when there is a governmental termination of freedom of movement through means intentionally applied." Id. at 597 (emphasis omitted).

Here, the City defendants have failed to show as a matter of law that plaintiff was not seized. A seizure occurs when, in light of all the facts, a reasonable person would have believed that he was not free to leave. See United States v. Faulkner, 450 F.3d 466, 469 (9th Cir. 2006). The City defendants intentionally prevented plaintiff from driving away from the parking lot. Plaintiff was told that he could not leave until the litter at the picnic area was picked up. Although plaintiff might have been able to walk away, he would have been forced to leave his car behind.

In Faulkner, the court dealt with a similar issue. There, a federal park ranger stopped all cars at an information center set up near the entrance to a recreational area to notify visitors of new regulations and to provide a free litter bag. The information center consisted of orange traffic cones, a stop sign, a uniformed park ranger, and an official vehicle with a siren and light bar parked next to the roadway. The stops lasted only about twenty seconds. When the defendant in Faulkner stopped at the information center, the park ranger noticed an open container of alcohol and eventually arrested the defendant.

7 - OPINION AND ORDER

The Ninth Circuit held that the defendant had been seized for Fourth Amendment purposes.  Id. at 469-70.

Unlike Jacoby and Peoples, the park ranger in Faulkner was an armed, commissioned law enforcement officer.  However, I conclude that there are issues of material fact whether the City defendants here made a sufficient show of authority by closing the gate and telling plaintiff that he could not leave until the trash was picked up from the picnic area.  The City defendants have not shown as a matter of law that a reasonable person in plaintiff's position would have believed that he was free to leave.  See Faulkner, 450 F.3d at 470.

### b. Reasonableness

The City defendants next argue that even if a seizure occurred, it was not unreasonable.  I agree.  I will assume that a seizure occurred to resolve the pending summary judgment motion.

In evaluating the reasonableness of the seizure here, I must determine whether the City defendants' primary purpose in closing the gate was to advance a general interest in crime control.  If so, the seizure would be invalid.  If not, I must determine whether the seizure was reasonable.  See Faulkner, 450 F.3d at 470.

In Faulkner, the court determined that the primary purpose of the information center was to notify visitors of new

8 - OPINION AND ORDER

regulations and to hand out free litter bags. The court noted that "curtailment of littering, illegal fires, and driving while intoxicated serves a purpose beyond the general interest in crime control." Id. at 471. One of the main reasons for the prohibition of alcohol was that 70% of the litter consisted of beer bottles.

Similarly, here the main purpose for closing the gate was to allow Peoples to talk to park users about littering, with the goal of reducing littering and other problems. There is no evidence that the City defendants intended anything more than this. I conclude that the City defendants' primary purpose "was not to advance the general interest in crime control, but to protect the use and enjoyment of the [park]." Id.

The next question is whether the seizure was reasonable. "The 'touchstone of the Fourth Amendment is reasonableness,' and the proper function of the Fourth Amendment 'is to constrain, not against all intrusions . . . but against intrusions which are not justified in the circumstances, or which are made in an improper manner.'" United States v. Willis, 431 F.3d 709, 714 (9th Cir. 2005) (quoting Florida v. Jimeno, 500 U.S. 248, 250 (1991), and Schmerber v. California, 384 U.S. 757, 768 (1966)). The court should weigh the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of interference with individual

9 - OPINION AND ORDER

liberty.  <u>Faulkner</u>, 450 F.3d at 472.

Here, I conclude as a matter of law that the City defendants' actions were reasonable.  While preventing littering may not be the highest law enforcement priority, it is nonetheless important to maintaining a public picnic area.  The brief stop advanced the public interest, and the interference with plaintiff's liberty was not severe.

### c.  Qualified Immunity

For purposes of possible appeal, I address defendants' argument that even if the seizure was unreasonable, they are entitled to qualified immunity.

"When government officials assert the defense of qualified immunity to an action under § 1983, a court evaluating the defense should first determine whether the plaintiff has shown the deprivation of a constitutional right."  <u>Sonoda v. Cabrera</u>, 255 F.3d 1035, 1040 (9th Cir. 2001) (citing <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999)) (footnote omitted).  If the alleged facts, taken in the light most favorable to the plaintiff, would establish a constitutional violation, the court then must determine whether the right was clearly established at the time of the alleged violation.  <u>Id.</u>  If the right is clearly established, the official then must show that a reasonable officer could have believed, in light of settled law, that he was not violating the clearly established right.  <u>Carlo v. City of</u>

10 - OPINION AND ORDER

Chino, 105 F.3d 493, 500 (9th Cir. 1997).  Qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'"  Burns v. Reed, 500 U.S. 478, 494-95 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Here, assuming that the facts taken in the light most favorable to plaintiff would establish a constitutional violation, and assuming that the Fourth Amendment right at issue was clearly established, I conclude that a reasonable officer in the shoes of either Jacoby or Peoples could have believed that the stop at issue did not violate plaintiff's Fourth Amendment rights.

### B.  False Imprisonment Claim

Plaintiff brings a state law claim for false imprisonment against the City.  To establish a claim for false imprisonment, the plaintiff must show that (1) the defendant confined the plaintiff; (2) the defendant intended the act that caused the confinement; (3) the plaintiff was aware of the confinement; and (4) the confinement was unlawful.  See Hiber v. Creditors Collection Service, 154 Or. App. 408, 413, 961 P.2d 898, 901 (1998).

Here, the confinement, if any, was lawful, so the City cannot be liable for false imprisonment.

/ / /

/ / /

11 - OPINION AND ORDER

**CLACKAMAS COUNTY DEFENDANTS' SUMMARY JUDGMENT MOTION**

**I.   Background**

Defendant Deputy Steeves was dispatched to the park after Peoples called 9-1-1.  He understood that he was sent to investigate a possible assault, harassment, or menacing.

When Deputy Steeves arrived at the park, he saw about six cars stopped behind the closed gate, with ten or fifteen high school students standing behind the gate.  Dahlgren, Jacoby, and Peoples were standing near the gate.  Deputy Steeves parked and walked over to talk to Dahlgren and the City defendants.

Deputy Steves concluded from his conversations that plaintiff had endangered Jacoby and Dahlgren by trying to force his way out of the gate with his car.  He arrested plaintiff for reckless endangerment.

However, at his deposition, Dahlgren testified that he was holding the gate closed after the two cars had driven away, and that he would have remembered if plaintiff had struck the gate with his car.  When asked to comment on the statement that plaintiff was trying to drive through the gate, Dahlgren testified that "it doesn't tally with what I remember."  Dahlgren Depo. at 66.  Dahlgren testified that "if somebody were doing that [trying to drive through the gate] and if I'm on the receiving end of a tug of way with a car, I would have remembered that." Dahlgren Depo. at 67.  He further testified, "as I pushed

12 - OPINION AND ORDER

the gate shut, it just kind of hit the front of the car.  Simply because if it was moving forward and it had come in contact with the gate and was consequently pushing the gate open, I would have felt it."  Dahlgren Depo. at 67.  Dahlgren testified that he closed the gate by himself, without any help from Jacoby, while Jacoby was off to the side of the gate.

## II.  Discussion

### A.  Civil Rights Claim

Deputy Steeves contends that he is entitled to qualified immunity.

The first issue is whether, taking the facts in the light most favorable to plaintiff, Deputy Steeves has shown as a matter of law that he did not violate plaintiff's Fourth Amendment right to be free from arrest without probable cause.  See Beck v. Ohio, 379 U.S. 89, 91 (1964).  "Probable cause means more than a bare suspicion; it exists when the officer's knowledge of reasonably trustworthy information is sufficient to warrant a prudent person to believe that an offense has been or is being committed." Graves v. City of Coeur D'Alene, 339 F.3d 828, 841 (9th Cir. 2003).  The court should examine the reasonableness of the arrest in light of the totality of the "'facts and circumstances' actually known to the officer" when he made the arrest. Mendocino Envtl. Ctr. v. Mendocino County, 14 F.3d 457, 462 (9th Cir. 1994) (quoting Act Up!/Portland v. Bagley, 988 F.2d 868, 873

13 - OPINION AND ORDER

(9th Cir. 1993)).  Probable cause depends on "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."  <u>Brinegar v. United States</u>, 338 U.S. 160, 175 (1949).

    I conclude that there are disputed issues of material fact regarding whether Deputy Steeves had probable cause to arrest plaintiff for reckless endangerment.  Dahlgren testified that plaintiff did not try to drive through the gate, or otherwise menace or threaten him.  Also, according to Dahlgren, Jacoby was not close enough to the gate to be threatened by plaintiff's car.  There is no evidence that Steeves asked plaintiff for his version of the events.  A factfinder could conclude that Deputy Steeves's conduct was objectively unreasonable in violation of the Fourth Amendment.

    The next question is whether the right was clearly established.  I conclude that the right to be free from arrest without probable cause was clearly established at the time of the events here.  <u>See</u> <u>Beck v. Ohio</u>, 379 U.S. at 91.

    The third and final question is whether a reasonable officer could have believed under these circumstances that he was not violating this right.  A police officer who reasonably believes that probable cause exists to make an arrest is entitled to qualified immunity.  <u>See</u> <u>Palmer v. Sanderson</u>, 9 F.3d 1433, 1436 (9th Cir. 1993).

14 - OPINION AND ORDER

I conclude that Deputy Steeves has not shown that a trier of fact could conclude only that a reasonable officer in these circumstances would have believed that probable cause existed to arrest plaintiff for reckless endangerment.  A factfinder could conclude that Deputy Steeves's investigation was inadequate given Dahlgren's testimony.  See Fuller v. M.G. Jewelry, 950 F.2d 1437, 1444 (9th Cir. 1991) (officers may have duty to investigate further based information obtained at the scene of crime); Merriman v. Walton, 856 F.2d 1333, 1335 (9th Cir. 1988) (reasonable officer would have investigated further based on exculpatory information).  It is true that an officer's conduct should not be evaluated based on hindsight.  See Graham v. Connor, 490 U.S. 386, 396 (1989).  Here, however, a factfinder could conclude that the information known to Deputy Steeves when he arrested plaintiff was not sufficient for probable cause.  See Graves, 339 F.3d at 844 ("the heart of our probable cause assessment [is] consideration of evidence supporting individualized suspicion") (original emphasis).  I conclude that there are disputed issues of material fact precluding summary judgment on qualified immunity.

**B.  False Imprisonment Claim**

Plaintiff brings a claim for false imprisonment under state law.  Defendants seek summary judgment.

Because there are disputed issues of material fact regarding

the lawfulness of plaintiff's arrest, the County's motion for summary judgment must be denied.

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

I conclude that there are disputed issues of material fact regarding the County defendants' liability, and that the City defendants are entitled to summary judgment. I therefore deny plaintiff's motion for summary judgment on liability.

### CONCLUSION

The City of Wilsonville defendants' motion for summary judgment (#49) is granted. The Clackamas County defendants' motion for summary judgment (#45) is denied. Plaintiff's motion for partial summary judgment (#53) is denied.

DATED this 25th day July, 2006.

                                           /s/ John Jelderks
                                          John Jelderks
                                          U.S. Magistrate Judge